# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CEDRIC BROWN, | 1:06-CV-01815 AWI GSA HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| K. MENDOZA-POWERS, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kern, following his conviction by jury trial on May 16, 1985, of first degree murder in violation of Cal. Penal Code § 187, and robbery in violation of Cal. Penal Code § 211. See Respondent's Answer to Petition (hereinafter "Answer"), Exhibit 1. On June 14, 1985, Petitioner was sentenced to serve an indeterminate term of twenty-five years to life in state prison with the possibility of parole. Id.

On April 6, 2005, Petitioner's second subsequent parole suitability hearing was held

1  before the California Board of Prison Terms (now the Board of Parole Hearings - "Board"). See
2  Answer, Exhibit 2. Petitioner participated in the hearing and was represented by counsel. Id. At
3  the conclusion of the hearing, the Board denied parole and deferred rehearing for two years. Id. at
4  63, 67.

5        Petitioner then sought relief in the state courts. Petitioner filed a petition for writ of
6  habeas corpus in the Kern County Superior Court on May 18, 2005, which was denied on
7  June 27, 2005, in a reasoned opinion. See Answer, Exhibit 3. He then filed a second habeas
8  petition in the Kern County Superior Court on July 4, 2005. Id. That petition was denied in a
9  reasoned opinion on September 1, 2005. Id. On September 29, 2005, Petitioner filed a habeas
10  petition in the California Supreme Court. See Answer, Exhibit 4. On July 19, 2006, the petition
11  was summarily denied. Id.

12        Petitioner filed the instant petition for writ of habeas corpus on December 13, 2006, in
13  this Court. The petition challenges the 2005 decision of the Board denying parole. Petitioner
14  contends the Board erroneously denied parole without evidence to support the decision. He
15  claims the decision was arbitrary and capricious in violation of his Constitutional rights. He
16  further argues the Board failed to consider all relevant factors, wrongly denied parole solely on
17  the basis of the commitment offense, used a disciplinary "chrono" to justify the denial when the
18  charges had been dismissed, and delayed the parole consideration hearing in violation of his
19  procedural due process rights.

20        On March 23, 2007, Respondent filed an answer to the petition. Respondent concedes the
21  petition is exhausted and timely. Petitioner filed a traverse on October 9, 2007.

22        **FACTUAL BACKGROUND**[1]

23        While driving to Mass on August 19, 1984, Ynez Terrazas saw an elderly woman and a
24  black male struggling over her purse. When the black male, whom Terrazas identified as being
25  Petitioner, gained control of the purse, he ran off while the elderly woman fell. When Terrazas
26  stopped to aid the woman, she noticed the woman had blood on her arm and was not moving. On

27
28      [1]The information is taken from the factual summary of the California Court of Appeals in its opinion affirming the conviction, as read into the parole hearing record by the Board. See Answer, Exhibit 2 at 11-13.

cross-examination, Terrazas admitted never seeing the black male push the elderly woman, however on re-direct, Terrazas stated that the woman did not appear to relinquish control of the purse voluntarily.

David Barragan, another witness who was working on a nearby roof, saw a man take a purse away from a woman. Although he was too far away to make a positive identification of Petitioner, Barragan did notice that the woman would not give up her purse and that Helen Rupp, the stipulated victim in this case, had to pull it away. When the man got the purse, Barragan saw the woman fall in the same motion. Barragan noted that the man pulled at the purse more than once.

Ray Vaughn, who was staying at his brother's apartment, saw Petitioner at the apartment that same morning. Petitioner looked as if he was carrying a bag. Even after being refused permission, Petitioner went into the bathroom. Through a crack in the door, Vaughn saw Petitioner going through the purse. Petitioner was arrested soon after at this apartment complex.

The victim was a 77-year-old woman who was very active before breaking her hip in the struggle for her purse. After the fall, Rupp was restricted to the use of a walker. Rupp, who not only broke her hip but also fractured her shoulder, had surgery to replace the hip on August 22, 1984. After being discharged, Rupp returned to the hospital on September 9, suffering from pneumonia. Rupp was released on September 24 and died in her home on October 18.

**DISCUSSION**

I.      Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

3

1  Petitioner is in custody of the California Department of Corrections pursuant to a state
2  court judgment. Even though Petitioner is not challenging the underlying state court conviction,
3  28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the
4  threshold requirement of being in custody pursuant to a state court judgment. Sass v. California
5  Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370
6  F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a
7  state prisoner in custody pursuant to a state court judgment, even when the petition is not
8  challenging his underlying state court conviction.'").

9  The instant petition is reviewed under the provisions of the Antiterrorism and Effective
10 Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63,
11 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the
12 adjudication of the claim "resulted in a decision that was contrary to, or involved an
13 unreasonable application of, clearly established Federal law, as determined by the Supreme Court
14 of the United States" or "resulted in a decision that was based on an unreasonable determination
15 of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.
16 § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

17 As a threshold matter, this Court must "first decide what constitutes 'clearly established
18 Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,
19 *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this
20 Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as
21 of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other
22 words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or
23 principles set forth by the Supreme Court at the time the state court renders its decision." Id.

24 Finally, this Court must consider whether the state court's decision was "contrary to, or
25 involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at
26 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may
27 grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]
28 Court on a question of law or if the state court decides a case differently than [the] Court has on a

set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

II.     Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at

1399; <u>Jancsek v. Oregon Bd. of Parole</u>, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, <u>Pedro</u>, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," <u>Greenholtz</u>, 442 U.S. at 16; 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole," <u>Id</u>.; and 4) the decision of the Board must be supported by "some evidence" having an indicia of reliability. <u>Superintendent, Mass. Correc. Inst. v. Hill</u>, 472 U.S. 445, 455 (1985); <u>Cato v. Rushen</u>, 824 F.2d 703, 705 (9th Cir.1987).

"In <u>Superintendent v. Hill</u>, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454 (1985), *quoting* <u>Wolff v. McDonnell</u>, 418 U.S. 539, 558 (1974)." <u>Sass</u>, 461 F.3d at 1128.  In determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence.  <u>Id</u>. Rather, the Court must determine whether there is any evidence in the record that could support the conclusion of the disciplinary board.  <u>Id</u>., *citing* <u>Superintendent v. Hill</u>, at 455-56.  Although <u>Hill</u> involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term."  <u>Id</u>., *citing* <u>Jancsek v. Oregon Bd. of Parole</u>, 833 F.2d at 1390.

In making a determination whether an inmate is suitable for parole, the BPH is guided by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the

prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs. §§ 2402(a) and (b).

In this case, with regard to the procedural protections outlined in Greenholtz, Petitioner was provided all that is required. Petitioner was given advance notice of the hearing, he was represented by counsel at the hearing, he was granted an opportunity to submit materials for the Board's consideration and an opportunity to be heard during the hearing, and he was provided a written decision explaining the reasons why parole was denied. See Answer, Exhibit 2.

Petitioner, however, contends the Board's decision was arbitrary, capricious and had no evidentiary support. After reviewing all relevant evidence, the Court finds that the state court rejection of Petitioner's claims was not unreasonable, because the Board's decision is supported by "some evidence."

Title 15, of the California Code of Regulations, Section 2402(c) sets forth certain negative factors which the Board would consider in determining whether Petitioner is suitable for parole.

Section 2402(c) provides:

> Circumstances Tending to Show Unsuitability. The following circumstances each tend to indicate unsuitability for release. These circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate unsuitability include:
>
> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
>
> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>
> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>
> (C) The victim was abused, defiled or mutilated during or after the offense.
>
> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.

>> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
>
> (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
> (3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.
>
> (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
>
> (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.
>
> (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

15 Cal.Code Regs. § 2402(c).

In denying parole in 2005, the Board first considered and found the circumstances of the commitment offense indicated unsuitability. Pursuant to § 2402(c)(1), the Board found the offense was especially heinous, atrocious, or cruel. In making this finding, the Board relied on factors (D) and (E).

The Board first found the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering under § 2402(c)(1)(D). In support of this finding, the Board noted that Petitioner struggled violently with a particularly vulnerable victim, a 77 year old woman, over her purse. Petitioner's actions caused the elderly woman to fall to the ground, break her hip and fracture her shoulder. These injuries eventually caused her death. Thus, there is some evidence to support the Board's finding.

Next, the Board found the motive to be very trivial pursuant to § 2402(c)(1)(E). Petitioner admitted he assaulted the elderly woman so he could obtain money to buy drugs. Therefore, there is some evidence to support the Board's finding that the motive was very trivial.

In addition to the commitment offense, the Board noted Petitioner's previous record of violence indicated unsuitability pursuant to § 2402(c)(2). Petitioner's record demonstrated an escalating pattern of violence. As a juvenile, Petitioner was placed on formal probation for receiving stolen property. On October 30, 1980, he was convicted and sentenced for carrying a

concealed firearm on his person. In 1981, he was charged with assault with a deadly weapon and convicted of battery. In 1982, he was found guilty of vandalism and received 24 months probation. In 1983, he was convicted of carrying a loaded weapon in a public place and possessing PCP. Again in 1983, Petitioner was convicted of possessing a controlled substance: PCP. And in 1984, he was arrested for the underlying offenses. Based on these facts, there is some evidence to support the Board's finding that Petitioner's previous record of violence indicated unsuitability.

The Board next found Petitioner had an unstable social history pursuant to § 2402(c)(3). Although Petitioner had a family and children, and a full-time job at the time he committed the offense, he also had a history of alcohol, marijuana and cocaine use. And, he had sold PCP on prior occasions. Given Petitioner's problems with substance abuse, the Board found he had an unstable social history. This finding is supported by at least "some evidence."

The Board also found Petitioner had engaged in negative behavior and misconduct while incarcerated. Petitioner had been disciplined eight times for serious misconduct, most recently in 1997 for battery on an inmate. He had also been recently counseled in 2004 for violating grooming standards. Pursuant to § 2402(c)(6), the Board properly relied on these circumstances as negative indicators of suitability.

Finally, the Board found the psychologist's report disturbing. Although the report was generally supportive of release, the Board was concerned over the psychologist's reservations with respect to Petitioner's history of substance abuse. The psychologist had written that Petitioner poses a "moderately low likelihood of becoming involved in a violent offense if released to the free community." See Answer, Exhibit 2 at p. 50. But, the psychologist noted that "[t]here is a caveat that such an assessment is at least partially based on the likelihood of continued abstinence from substance abuse." Id. Petitioner also told the Board he had been sober since 1994, but the psychologist had recorded Petitioner had been sober for fourteen years. To add further confusion to Petitioner's substance abuse question, a chrono in the file indicated he had tested positive for alcohol in 1998. Petitioner argues the chrono should not have been considered because it had been dismissed. Nevertheless, the Board could find no record of the

chrono having been dismissed, and Petitioner did not submit proof of the dismissal. The chrono was present in Petitioner's legal file and was therefore properly considered. Additionally, the psychologist noted that Petitioner's risk of violence to the community was moderate to low provided he abstained from substance abuse. In light of these facts, the Board found Petitioner needed further self-help programming and therapy. The Board's finding was supported by some evidence.

The Board also considered the various circumstances demonstrating suitability pursuant to § 2402(d). The Board noted Petitioner had a stable social history other than his substance abuse issues. He had maintained relationships with his children and family. In addition, Petitioner was commended for his numerous positive work reports. The Board noted the many letters in support Petitioner had received from his community as well as the numerous offers of employment and residence. Nevertheless, the Board found these positive factors, while promising for a possible future grant of parole, did not outweigh the Board's determination that Petitioner remained an unreasonable risk of danger to society if released. The gravity of Petitioner's offense, his prior record of violence, his substance abuse issues and his negative institutional behavior, despite his positive gains, were more indicative of a danger to the public.

It is apparent the Board considered all relevant evidence in this case and carefully balanced and assessed the various factors. Those findings were supported by at least "some evidence."

Petitioner raises various other claims which are also without merit. He claims the Board failed to consider "all relevant factors." However, he does not state what other factors were not properly considered. As discussed above, all relevant factors were addressed by the Board. He also argues the Board improperly based its decision on the commitment offense itself. As Respondent correctly argues, the California Supreme Court in In re Dannenberg, 34 Cal.4th 1061, 1095 (2005), found the commitment offense and prior offenses could alone be sufficient to deny parole under California law. Moreover, the Board did not rely solely on the commitment and prior offenses. The Board also relied on Petitioner's institutional behavior and substance abuse issues in denying parole. Petitioner also complains that a chrono was relied upon that had

been previously dismissed. As previously discussed, there was no record of this dismissal and Petitioner did not offer proof of it. Finally, Petitioner claims the Board improperly postponed his hearing in violation of his procedural rights, and he argues he should be compensated. The Kern County Superior Court found the Board was justified in postponing the hearing in order to clarify Petitioner's sentence. Also, the remedy for an improper postponement would have been a rehearing, which Petitioner has already received.

In light of the above, it cannot be said that the state court resolution of Petitioner's claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED; and

2. Judgment be ENTERED in favor of Respondent.

This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   December 4, 2007**            **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE